UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

JOSE VASQUEZ-SILVA

Case No. 2:10-cr-00026-JMS-CMM-1

ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (COMPASSIONATE RELEASE)

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:10-cr-00026-JMS-CMM |
| | ) | |
| JOSE VASQUEZ-SILVA, | ) | -01 |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Jose Vasquez-Silva (01) has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). [Filing No. 1159.] For the reasons explained below, his motion is **DENIED**.

## I.
### BACKGROUND

On December 22, 2011, Mr. Vasquez-Silva pled guilty to one count of Conspiracy to Distribute 500 Grams or More of a Mixture of Methamphetamine and Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 851; and two counts of Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h). [Filing No. 722.] The offense conduct is summarized in the Presentence Investigation Report ("PSR") as follows:

> From approximately August 2009 through December 9, 2010, Jose Vasquez-Silva and Mario Rodas directed the activities of a methamphetamine and marijuana trafficking organization that operated in the Washington and Vincennes, Indiana, area and elsewhere.
>
> The Silva/Rodas Organization received approximately 15 pounds of methamphetamine per month from sources of supply in Los Angeles, California; Denver, Colorado; and Chicago, Illinois…. The Silva-Rodas Organization received marijuana from…a resident of Juarez, Mexico. Vasquez-Silva coordinated the receipt of the methamphetamine and marijuana from the out-of-

2

> state sources, and Rodas coordinated the distribution of the methamphetamine and marijuana in western Indiana.
>
> \*            \*            \*
>
> Conservatively, the Silva/Rodas organization received approximately 15 pounds of methamphetamine per month from August 2009 through December 9, 2010.  This is approximately 240 pounds, or 109 kilograms, of methamphetamine.  Additionally, the organization received at least 148.5 pounds, or 67.36 kilograms, of marijuana.

[Filing No. 810 at 7-10.]  The PSR also details Mr. Vasquez-Silva's involvement in obtaining methamphetamine in Denver, Colorado, using another individual to transport methamphetamine to Indiana, the robbery of one of his methamphetamine customers, and the laundering of drug proceeds.  [Filing No. 810 at 8-10.]

Mr. Vasquez-Silva faced a guideline term of 360 months' to life imprisonment.  [Filing No. 810 at 18.]  The Court sentenced Mr. Vasquez-Silva to 300 months' imprisonment on the Conspiracy to Distribute 500 Grams or More of a Mixture of Methamphetamine and Marijuana count and 240 months' imprisonment on the Conspiracy to Launder Monetary Instruments counts, to be served concurrently.  [Filing No. 851 at 2.]  Mr. Vasquez-Silva was also sentenced to ten years of supervised release.  [Filing No. 851 at 3.]  The Bureau of Prisons ("BOP") currently reports Mr. Vasquez-Silva's anticipated release date as July 23, 2031. https://www.bop.gov/inmateloc/ (last visited July 27, 2026).

Mr. Vasquez-Silva has filed his second Motion for Compassionate Release, [Filing No. 1159], the Government opposes the motion, [Filing No. 1173; Filing No. 1174], and Mr. Vasquez-Silva did not file a reply.  On June 3, 2026, the Court ordered Mr. Vasquez-Silva to show cause by July 2, 2026 why his argument regarding a nonretroactive change in sentencing law should not be denied in light of the United States Supreme Court's recent decision in *Rutherford v. United States*, 608 U.S. ----, 146 S. Ct. 1320 (2026), [Filing No. 1194], and Mr. Vasquez-Silva has not

responded to date.  Mr. Vasquez-Silva's Motion for Compassionate Release is now ripe for the Court's consideration.

## II.
### DISCUSSION

The general rule is that sentences imposed in federal criminal cases are final and may not be modified.  18 U.S.C. § 3582(c).  Yet under one exception to this rule, a provision known as compassionate release, a court may reduce a sentence.  18 U.S.C. § 3582(c)(1)(A)(i).

The United States Sentencing Commission has been authorized by Congress to develop policies to be used by the courts in considering compassionate release motions.  The Sentencing Commission has set forth the following considerations: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement"; and second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(1)(A) and (a)(2).  If a court finds that extraordinary and compelling reasons exist and that the defendant is not a danger to the safety of any other person or to the community, it goes on to consider the sentencing factors in 18 U.S.C. § 3553(a), "to the extent that they are applicable." U.S.S.G. § 1B1.13(a).

The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute.  *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020).  The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction," *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).  On this point, the United States Sentencing Commission recently amended the Guidelines

Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13 (Nov. 2023).

Mr. Vasquez-Silva argues in support of his motion that due to several changes in the law he would receive a significantly shorter sentence if he were sentenced today, that his mandatory minimum sentence was improperly increased because the increase was based on facts not proven to a jury, and that he has engaged in rehabilitation while incarcerated.  [Filing No. 1159.]  The Court will address each argument in turn.

### A. Extraordinary and Compelling Reasons

#### 1. Changes in the Law

##### a. Changes in the Mandatory Minimum Structure of 21 U.S.C. § 841(a)(1)

Mr. Vasquez-Silva first argues that changes to the mandatory minimum sentence he would face under § 841 would lead to a lower sentence if he were sentenced today.  [Filing No. 1159 at 3.]  Specifically, he notes that he would face a mandatory minimum of 15 years' imprisonment if sentenced under the current version of § 841(a)(1).  [Filing No. 1159 at 3.]

In its response, the Government argues that although Mr. Vasquez-Silva would receive a lower sentence if sentenced under current law, the changes to § 841 are nonretroactive so cannot be considered extraordinary and compelling.  [Filing No. 1173 at 3-4.]

As noted above, the Court ordered Mr. Vasquez-Silva to show cause by July 2, 2026 why his argument regarding a nonretroactive change in sentencing law should not be denied in light of the Supreme Court's recent decision in *Rutherford*.  [Filing No. 1194.]  Because Mr. Vasquez-Silva has not responded to the Court's Order to Show Cause to date, the Court considers his argument related to nonretroactive changes to the law to be abandoned.

In any event, his argument related to changes to § 841 is without merit. U.S.S.G. § 1B1.13(b)(6) provides:

> **(6) Unusually Long Sentence.** – If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

The Seventh Circuit Court of Appeals has held that a nonretroactive change in the law, "whether alone or in combination with other factors," cannot be considered an extraordinary and compelling reason for compassionate release. *United States v. Thacker*, 4 F.4th 569, 574-76 (7th Cir. 2021) (holding that nonretroactive change to § 924(c) cannot constitute an extraordinary and compelling reason and explaining that "there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute") (citation omitted). Indeed, this Court denied an earlier Motion for Compassionate Release filed Mr. Vasquez-Silva in which he raised this same argument, [*see* Filing No. 1133], and the Seventh Circuit Court of Appeals affirmed that decision, holding that previous cases "foreclose[d] [Mr.] Vasquez-Silva's reliance on non-retroactive changes in sentencing law." *See United States v. Vasquez-Silva*, 2023 WL 5275911, at *1 (7th Cir. Aug. 16, 2023).

Most significantly, the United States Supreme Court considered this exact issue just two months ago in *Rutherford v. United States*, 608 U.S. ----, 146 S. Ct. 1320 (2026), and held that "[w]hen Congress declines to make a sentencing amendment retroactive, the fact that a preamendment sentence is longer than it would have been postamendment is not an 'extraordinary and compelling reason[n]' that 'warrant[s]' a sentence reduction." *Id.* at 1330 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). It explained:

6

> The disparity created by Congress's amendment to § 924(c) does not satisfy [the] definition [of "extraordinary and compelling"]. Far from "extraordinary," nonretroactive amendments to criminal penalties are the norm. Ordinarily, we have explained, statutory changes to federal penalties only benefit *future* offenders. Congress sometimes deviates from the default, as it did in the Act, by extending the revised penalties to defendants not yet sentenced. Even then, some measure of prospectivity is par for the course: The ordinary practice is to withhol[d] that change from defendants already sentenced. And regardless of whether the line is drawn at the offense or the sentence, a nonretroactive penalty change necessarily creates a disparity between those who receive the benefit and those who do not…. Such a disparity is an unexceptional feature of a system in which nonretroactivity is the default.

> As for "compelling": It is hard to see how Congress's deliberate decision *not* to extend newly reduced penalties to those already sentenced could be a convincing reason that warrants a reduction. As we have explained, Congress decided to apply the lower prison sentences to some violators of § 924(c) – those for whom a sentence had not yet been imposed – but not others. In doing so, Congress reinforced its interest in finality and avoided burdening district courts with additional litigation. Treating the disparity resulting from § 924(c)'s amendment as a compelling reason for reducing a sentence would undermine Congress's choice to leave the sentence intact.

*Rutherford*, 146 S. Ct. at 1330-31 (quotations and citations omitted, emphasis in original). The Supreme Court's decision in *Rutherford* applies with equal force to nonretroactive changes to the law outside of the § 924(c) context.

In short, the nonretroactive changes to § 841 – even if they would lead to a lesser sentence for Mr. Vasquez-Silva if he were sentenced today – do not constitute an extraordinary and compelling reason for release, whether considered alone or in combination with any other factor.

b.    <u>Changes to the Guidelines Related to Methamphetamine Purity</u>

Mr. Vasquez-Silva argues that "[t]he U.S. Sentencing Guidelines use [of] drug purity as a proxy for a defendant's culpability has evolved since [he] was sentenced," and that his base offense level of 38 should have been 32 if he "was deemed to have possessed 500 grams or more of methamphetamine mixture." [Filing No. 1159 at 14.]

7

The Government argues in its response that "[t]he Sentencing Guidelines provision that imposes a higher base offense level for pure methamphetamine than adulterated methamphetamine remains in effect," that the Court did not factor in the purity of the methamphetamine in determining Mr. Vasquez-Silva's offense level in any event, and that Mr. Vasquez-Silva's base offense level would still be 38 even under the changes effectuated by Amendment 782 to the Sentencing Guidelines.  [Filing No. 1173 at 4-5.]

Mr. Vasquez-Silva's argument regarding changes to the guidelines related to methamphetamine purity is meritless because he would have a base offense level of 38 even under the current version of U.S.S.G. § 2D1.1(c).  Specifically, the PSR states that the underlying offense involved 109 kg of methamphetamine, [Filing No. 810 at 10], which still leads to a base offense level of 38.  See U.S.S.G. § 2D1.1(c)(1) (specifying a base offense level of 38 for 45 kg or more of methamphetamine or 4.5 kg or more of methamphetamine (actual)).  Accordingly, any change to the guidelines regarding methamphetamine purity or amounts would not result in a lower sentence for Mr. Vasquez-Silva if he were sentenced today.  Additionally, Mr. Vasquez-Silva cannot use a motion for compassionate release to challenge the reasonableness of his sentence. See United States v. Colon, 2024 WL 3983324, at *1 (7th Cir. Aug. 29, 2024) (sentencing challenges may not be brought through a motion for compassionate release).

Any change to U.S.S.G. § 2D1.1 does not constitute an extraordinary and compelling reason for release, whether considered alone or in combination with any other factor.

2.      *Sentence Based on Facts Not Proven to a Jury*

In support of his motion, Mr. Vasquez-Silva argues that the First Step Act "limited the convictions that would justify an enhancement to only those convictions that meet the definition of a 'serious drug felony,'" and that "failure to charge drug quantity in the indictment and prove it

to a jury is plain error because the enhancement penalty increases a defendant's sentence above the statutory prescribed maximum penalty." [Filing No. 1159 at 20-21.]  He asserts that his mandatory minimum sentence was increased "based on facts that were never charged [as] an element that must be submitted to the jury."  [Filing No. 1159 at 21 (quotation and citation omitted).]

The Government argues in its response that Mr. Vasquez-Silva stipulated to the fact that he had a prior felony drug conviction and that it increased his mandatory minimum sentence to twenty years' imprisonment.  [Filing No. 1173 at 5.]  It argues further that it was not required to prove sentencing enhancements based upon recidivism to a jury and that even if the law has changed and now requires proof of a prior conviction to a jury, the change would be nonretroactive so cannot constitute an extraordinary and compelling reason for release.  [Filing No. 1173 at 5-6.]

As for Mr. Vasquez-Silva's prior felony drug conviction, which increased his mandatory minimum sentence, Mr. Vasquez-Silva acknowledged the existence of that conviction in his Plea Agreement.  [*See* Filing No. 718 at 1-2.]  He cannot now argue that the Government was required to prove the fact of the conviction to a jury.  Further, as to his argument that the Government was required to prove the drug quantity to a jury, where the sentencing guidelines are treated as advisory (as they were here), the drug weights used to determine guidelines ranges do not have to be submitted to a jury.  *See, e.g.*, *United States v. Bryant*, 420 F.3d 652, 656 (7th Cir. 2005) ("By treating the guidelines as advisory, the judge necessarily sidestepped [any] constitutional infirmity… – judicial factfinding coupled with mandatory application of the guidelines…. [Precedent does] not foreclose judicial factfinding in the sentencing context, nor [does it] dictate that judges must find those facts beyond a reasonable doubt"); *see also United States v. Corona-Gonzalez*, 2024 WL 4647937, at *3 (7th Cir. Nov. 1, 2024) (where purity level of drug alters only the guidelines range and not the statutory range of the offense, it can be determined at sentencing

9

by a preponderance of the evidence).  And again, Mr. Vasquez-Silva cannot challenge the reasonableness of his sentence through a motion for compassionate release.  *Colon*, 2024 WL 3983324, at *1.

Mr. Vasquez-Silva's argument that the Government was required to prove the fact of his prior conviction and the drug quantity to a jury in connection with determining his sentence is not an extraordinary and compelling reason for release, whether considered alone or in combination with any other factor.

### 3.    Rehabilitation

Mr. Vasquez-Silva also argues in support of his motion that he is "a changed man" and "has been free from incidents for 14-years."  [Filing No. 1159 at 22.]

The Government argues in its response that rehabilitation alone cannot constitute an extraordinary and compelling reason for release, and that Mr. Vasquez-Silva has not presented any other extraordinary and compelling reasons.  [Filing No. 1173 at 6.]

Neither Mr. Vasquez-Silva nor the Government have provided the Court with records related to any programming Mr. Vasquez-Silva has engaged in while incarcerated or any documents reflecting his disciplinary history.  But, even assuming he has engaged in programming and has remained free of disciplinary action, such efforts are expected and rehabilitation "is not, by itself, an extraordinary and compelling reason" for release in any event.  U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t).  Rehabilitation "may be considered in combination with other circumstances," *id.*, but the Court has already found that the other circumstances to which Mr. Vasquez-Silva points do not constitute extraordinary and compelling reasons for compassionate release.  Further, as discussed in more detail below, the Court finds that Mr. Vasquez-Silva would be a danger to any other person or to the community if he were to be released before an additional period of

10

incarceration. Mr. Vasquez-Silva's efforts at rehabilitation, while commendable, are not a reason for compassionate release, whether considered alone or in combination with any other reason.

In sum, Mr. Vasquez-Silva has not presented extraordinary and compelling reasons for release, but the Court goes on to consider whether he is a danger to the safety of any other person or to the community.

### B.    Danger to the Safety of Any Other Person or to the Community

Mr. Vasquez-Silva argues that in addition to having a clean disciplinary record while incarcerated, he is "remorseful for his impetuous conduct," "seeks forgiveness," "has aged and looks ahead to brighter and more productive days," and deserves a "second chance." [Filing No. 1159 at 22-23.]

In its response, the Government notes that Mr. Vasquez-Silva "was the leader of a high-volume methamphetamine trafficking organization that distributed approximately fifteen pounds of methamphetamine per month in western Indiana," and that he "used his leadership role in the organization to perpetuate acts of violence in western Indiana." [Filing No. 1174 at 2.] The Government discusses the fact that Mr. Vasquez-Silva and one of his co-defendants recruited three individuals to rob a drug trafficking customer "to collect money to offset the money that they lost due to the interdiction of the drug courier," which "clearly constituted an act of violence and posed a severe danger to their drug customer and other innocent people who happened to visit the residence on the evening of the attempted robbery." [Filing No. 1174 at 2-3.] The Government also points to Mr. Vasquez-Silva's two prior felony drug trafficking offenses and other felony and misdemeanor convictions, and asserts that he has violated his conditions of probation on six occasions.

Mr. Vasquez-Silva had a leadership role in an organization that trafficked approximately 109 kilograms of methamphetamine and approximately 67.36 kilograms of marijuana in just a four-month period in 2009 and 2010. Mr. Vasquez-Silva also recruited three individuals to rob the home of a drug trafficking customer and directed the laundering of thousands of dollars in drug proceeds. Further, Mr. Vasquez-Silva has an extensive criminal history including convictions for possession of marijuana for sale, possession of ephedrine with intent to manufacture methamphetamine, illegal entry into the United States, throwing an object at a vehicle with intent to do great injury, and possession of a firearm by a felon. He has entered the United States illegally on more than one occasion and has also used a social security number that was not issued to him. Further, when he committed the offense underlying this case, he had an outstanding warrant for a probation violation in a California state court case. The Court cannot discount the real danger to the community that Mr. Vasquez-Silva would pose if he were to be released before an additional period of incarceration. The Court finds that Mr. Vasquez-Silva is a serious danger to the safety of any other person or to the community, making compassionate release inappropriate. 18 U.S.C. § 3142(g); U.S.S.G. § 1B1.13(a)(2).

### C.    Section 3553(a) Factors

Mr. Vasquez-Silva argues that the § 3553(a) factors weigh in favor of compassionate release, stating that he "presents an impeccable behavior in the past 14-years," with "[n]o incidents in prison and an exemplary work record." [Filing No. 1159 at 7.]

The Government does not specifically address the § 3553(a) factors, but its discussion of whether Mr. Vasquez-Silva is a danger to any other person or to the community is relevant to the § 3553(a) analysis as well.

The Court has already found that compassionate release is not warranted because Mr. Vasquez-Silva has not presented extraordinary and compelling reasons for his release and because he would be a danger to any other person or to the community if he were to be released before an additional period of incarceration.  Although it need not consider the factors set forth in § 3553(a), it also finds for the reasons already discussed that releasing Mr. Vasquez-Silva at this point would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, or protect the public from further crimes.  Consideration of the § 3553(a) factors provides an independent basis for denying Mr. Vasquez-Silva's Motion for Compassionate Release.

In sum, the Court finds that Mr. Vasquez-Silva has not presented extraordinary and compelling reasons to release him, he would be a danger to the safety of any other person or to the community if he were to be released before an additional period of incarceration, and the § 3553(a) factors weigh against compassionate release.  Accordingly, his Motion for Compassionate Release, [Filing No. 1159], is **DENIED**.

### III.
#### CONCLUSION

For the reasons stated above, Mr. Vasquez-Silva's Motion for Compassionate Release, [1159], is **DENIED**.

Date: 7/28/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

13

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Jose Vasquez-Silva
#62701-208
FCI Petersburg Low
Federal Correctional Institution
P.O. Box 1000
Petersburg, VA 23804